# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3900

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Salvatore Vincent Fazio, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  September 25, 2009
Filed:  March 4, 2010

_____

Before BYE, ARNOLD and SMITH, Circuit Judges.

_____

BYE, Circuit Judge.

Salvatore Fazio was indicted for transportation and possession of child pornography and being a felon in possession of a firearm.  After the district court[1] determined Fazio was incompetent to assist in his own defense, the prosecution brought a motion pursuant to Sell v. United States, 539 U.S. 166 (2003), to forcibly medicate Fazio in order to restore his competency to stand trial.  Applying the factors set forth in Sell, the district court granted the prosecution's motion.  Fazio appeals, arguing the district court erred in its findings of fact and conclusions of law.  Because

_____

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

the district court did not clearly err in its findings of fact or misapply the law, we affirm.

I

On August 18, 2005, a federal superseding indictment was returned by a grand jury in the Eastern District of Missouri, charging Fazio with two child exploitation offenses and one count of being a felon in possession of firearms.

On October 24, 2006, the district court found Fazio "presently suffers from a mental disease or defect rendering him mentally incompetent to the extent he is unable to assist properly in his defense." Fazio was admitted to the United States Medical Center for Federal Prisoners (MCFP) in Springfield, Missouri, on March 27, 2007. At the time he filed this appeal, Fazio was seventy years old. On April 11, 2007, Fazio was transferred to a mental health unit. Roughly seven months later, Dr. Christina Pietz, a Staff Psychologist at the MCFP, completed a Forensic Update. Dr. Pietz reported that when Fazio arrived for treatment, he "was adamant that he did not suffer from a mental illness and would not consider taking medication." Fazio persisted in his refusal to take antipsychotic medication. According to Dr. Pietz, "[b]ecause [Fazio] is unwilling to take medication, his condition remains the same in that he is not competent to participate in legal proceedings."

The prosecution subsequently brought a motion requesting that Fazio be forcibly medicated, and the district court held a hearing on May 20, 2008. At the hearing, the Government presented two witnesses, both doctors from the MCFP in Springfield, Missouri–Dr. Christina Pietz, Ph.D., ABPP, Staff Psychologist, and Dr. Robert Sarrazin, M.D., Chief of Psychiatry. The defendant called one witness, Dr. Stephen Peterson, M.D., a medical doctor specializing in psychiatry and forensic psychiatry in St. Louis and Kansas City, Missouri.

Dr. Pietz testified:

> [Fazio] believes that he has special relationships with law enforcement. [Fazio] believes that he was . . . hired by Walmart to assist in capturing child molesters on pornographic Internet sites. He has made comments that he . . . has a special relationship with law enforcement regarding access of computers, and he believes himself to be a very special person.

In Dr. Sarrazin's prior assessment of Fazio in November 2007, Dr. Sarrazin noted that Fazio "continued to assert[] that he was involved with the FBI, that he was part of a law enforcement team that was addressing child pornography."

The Government also introduced statements made by Fazio during a prior forensic examination conducted by Dr. Gitry Heydebrand on July 25, 2006. In sharing his version of the events leading to the federal Indictment, Fazio stated he found websites containing child pornography and as a result:

> [S]ent Ashcroft emails and called his office. They put me on record and he said "I'll take care of it." I went back and they were still up. I called Ashcroft's office again and said I was going to extract those photos and notify Yahoo. They were marked as evidence. It was my job as a legal advocate for human decency and cleanliness.

Dr. Heydebrand noted Fazio "did not appear anxious, distressed or defensive while discussing these topics." When Dr. Heydebrand asked Fazio if he understood the charges against him, Fazio replied "[t]he charges should be dismissed. I had child porn–so what? I found it on the internet and sent it to law enforcement. They won't act on it. I was helping. I got people arrested–I found people."

Dr. Pietz concluded Fazio suffers from paranoid schizophrenia. Dr. Peterson, the psychiatrist hired by Fazio, conducted a diagnostic interview with Fazio on August

11, 2005. Dr. Peterson concluded Fazio suffers from dementia due to other general medical conditions.

When asked to explain the difference between schizophrenia and dementia, Dr. Pietz explained:

> [T]he best way to describe it is that schizophrenia refers to an individual that has a loss of contact with reality. Either they have the delusions or false beliefs or they are attending to internal stimuli. Dementia refers to . . . cognitive deficits, and there are a number of things that you look for in an individual to determine if they have cognitive deficits. Memory impairment is probably the number one issue. Disturbances in what we refer to as executive functioning–planning, organizing, that sort of thing. Disturbances in problem solving skills. Confusion, disorientation–you may see a little bit of that, but the big issues are going to be the memory impairment and then cognitive disturbances.

In regard to whether Fazio suffers from dementia, Dr. Pietz stated, "I do think he has memory impairment. I do think he has cognitive disturbances but not to the degree that he meets the criteria for that particular disorder." She also stated:

> We have patients here that are demented, that do have severe cognitive deficits and cognitive disturbances and can't do those things, so we have an orderly that escorts them to meals and escorts them to their appointments and ensures that they receive their medication and that they shower regularly.

Fazio, on the other hand, manages these tasks independently, according to Dr. Pietz.

Dr. Sarrazin prepared a psychiatric report on Fazio after reviewing Fazio's medical history. Dr. Sarrazin testified he believes Fazio requires antipsychotic medications to treat his psychotic symptoms in order to be competent to stand trial.

Dr. Sarrazin further testified there was a 75 to 87 percent chance the medications he recommended would make Fazio competent to stand trial. Finally, Dr. Sarrazin testified the risk of death to Fazio in antipsychotic treatment would be very small. All three experts who testified at the <u>Sell</u> hearing were not aware of any other less intrusive types of treatment that are available to assist Fazio in regaining competency.

The actual medications recommended by Dr. Sarrazin, in the order of preference, include Abilify (generic is aripiprazole), Risperdal (generic is risperidone), Zyprexa (generic is olanzapine), and Haldol (generic is haloperidol). Dr. Sarrazin testified that "[s]tudies have shown that all across the board these medications are equally effective treating psychotic disorders. Where they differ is tolerance and side effects and how each individual tolerates the medication."

Following the hearing, the district court entered an order granting the Government's motion to forcibly medicate Fazio. The district court stated "[i]f Defendant does not submit to this medication voluntarily within ten days of this Memorandum and Order, involuntary administration of psychiatric medication is ordered." Specifically, the court concluded the crimes charged in the superseding indictment are serious and "an important Government interest is at stake," and the government presented clear and convincing evidence showing "the administration of medication is substantially likely to restore Mr. Fazio's competency to stand trial." Further, the court concluded "there is no evidence that the recommended medication would interfere with Mr. Fazio's ability to aid in the preparation of his own defense, and . . . the medications would have no prejudicial effects on Mr. Fazio's physical appearance." Furthermore, the district court found the government presented clear and convincing evidence showing "involuntary medication is necessary to further the Government's important interests, and . . . there is no less intrusive means that could accomplish substantially the same results." Lastly, the district court found the government presented "clear and convincing evidence that Mr. Fazio suffers from

paranoid schizophrenia" and that "the involuntary administration of antipsychotic medication is medically appropriate."

Fazio timely appealed the district court's forcible medication order.

II

In <u>Sell v. United States</u>, 539 U.S. 166 (2003), the Supreme Court considered "whether the Constitution permits the Government to administer antipsychotic drugs involuntarily to a mentally ill criminal defendant–in order to render that defendant competent to stand trial for serious, but nonviolent, crimes." <u>Id.</u> at 169. The Court concluded the Government could administer antipsychotic drugs involuntarily if four criteria were met.

First, "a court must find that important governmental interests are at stake," though "[s]pecial circumstances may lessen the importance of that interest." <u>Id.</u> Second, "the court must conclude that involuntary medication will significantly further those concomitant state interests." <u>Id.</u> at 181. This includes finding that "administration of the drugs is substantially likely to render the defendant competent to stand trial," and "[a]t the same time . . . that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." <u>Id.</u> Third, "the court must conclude that involuntary medication is necessary to further those interests" and that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." <u>Id.</u> Fourth, and finally, "the court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." <u>Id.</u> The Court then emphasized that the goal of this test is "to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the interest in rendering the defendant competent to stand trial." <u>Id.</u>

-6-

The <u>Sell</u> Court did not specify a standard for reviewing <u>Sell</u> orders. Several other circuits have, however, specified standards of review for each factor of the <u>Sell</u> test. All courts of appeal that have addressed this issue have concluded the first <u>Sell</u> factor presents a legal question subject to de novo review. <u>See</u>, <u>e.g.</u>, <u>United States v. Hernandez-Vasquez</u>, 513 F.3d 908, 915-16 (9th Cir. 2008); <u>United States v. Green</u>, 532 F.3d 538, 546 (6th Cir. 2008) (reviewing the first <u>Sell</u> factor de novo); <u>United States v. Palmer</u>, 507 F.3d 300, 303 (5th Cir. 2007) (same); <u>United States v. Bradley</u>, 417 F.3d 1107, 1113-14 (10th Cir. 2005) (same); <u>United States v. Evans</u>, 404 F.3d 227, 236 (4th Cir. 2005) (same); <u>United States v. Gomes</u>, 387 F.3d 157, 160 (2d Cir. 2004) (same).

With respect to the remaining <u>Sell</u> factors, the overwhelming majority of courts have held <u>Sell</u> factors two through four present factual questions subject to clear error review. <u>See, e.g.</u>, <u>Hernandez-Vasquez</u>, 513 F.3d at 915-16; <u>Green</u>, 532 F.3d at 551-52 (holding that <u>Sell</u> factors two, three, and four are factual questions reviewed for clear error); <u>Palmer</u>, 507 F.3d at 303 (same); <u>Evans</u>, 404 F.3d at 240 (same); <u>Gomes</u>, 387 F.3d at 160 (same); <u>but see</u> <u>Bradley</u>, 417 F.3d at 1113-14 (holding that both <u>Sell</u> factors one and two are legal, or mixed legal and factual, questions subject to de novo review).[2] We agree with the majority of our sister circuits. Therefore, while we

_____

[2]The Supreme Court and this court have similarly not addressed the quantum of proof the government bears at a <u>Sell</u> hearing. All other courts of appeals addressing this issue have held, however, that the government bears the burden of proof on factual questions by clear and convincing evidence. <u>See, e.g.</u>, <u>Gomes</u>, 387 F.3d at 159 (applying and requiring the government to meet the "clear and convincing evidence" standard previously articulated in <u>Riggins v. Nevada</u>, 504 U.S. 127, 134 (1992), as to the factual findings in <u>Sell</u> factors two through four); <u>Green</u>, 532 F.3d at 545 ("A <u>Sell</u> order requires the government to present clear and convincing evidence of [the factual components of each of the four factors]."); <u>Bradley</u>, 417 F.3d at 1114 (agreeing that <u>Sell</u> factors two through four are factual findings that the Government must prove by clear and convincing evidence). We agree with our sister circuits that the government bears the burden of proving the final three <u>Sell</u> factors by clear and convincing evidence.

review de novo the district court's determination that important governmental interests are at stake, we review the district court's determinations with respect to the remaining Sell factors for clear error.

Fazio first argues the district court erred when it held that the government proved an important government interest is at stake. We disagree.

As the Sell Court concluded, "[t]he Government's interest in bringing to trial an individual accused of a serious crime is important." Sell, 539 U.S. at 180. Fazio is charged with crimes involving the transportation (Count I) and possession (Count II) of child pornography, as well as being a felon in possession of nine firearms (Count III). Furthermore, the government alleges Fazio is an armed career criminal based on his convictions for assault with a deadly weapon (February 19, 1962), the felonies of robbery and assault with a deadly weapon (July 26, 1965), and two convictions for armed robbery (August 23, 1974). See 18 U.S.C. § 924(e). The mandatory minimum sentence available for an armed career criminal is fifteen years. Should Fazio be convicted and sentenced as an armed career criminal, the result would reflect Congress' judgment that the course of criminal conduct for which Fazio stands accused is very serious.

Furthermore, child exploitation and firearms offenses have been recognized as serious crimes. See United States v. Grape, 549 F.3d 591, 602 (3d Cir. 2008) (citing United States v. Goff, 501 F.3d 250, 258-60 (3d Cir. 2007) (highlighting the seriousness of and harm associated with the use of child pornography)); Gomes, 387 F.3d at 160-61 (concluding that simple possession of a firearm by a felon who also is an armed career criminal "is a serious threat in itself").

Thus, we have little difficulty concluding an important government interest is at stake in this case.

Fazio next argues the district court erred by concluding the medication plan outlined by Dr. Sarrazin was substantially likely to restore Fazio's competency to stand trial and substantially unlikely to have side effects. The district court accepted the testimony of Dr. Sarrazin, who testified Fazio suffered from schizophrenia, there was a 75 to 87 percent chance that the medications he recommended would make Fazio competent to stand trial, and the risk of death to Fazio in antipsychotic treatment would be very small.

Fazio contends Dr. Sarrazin's estimate was based on the general prison population and not a specific analysis of Fazio. The record belies this claim. Dr. Sarrazin made his claim specifically with respect to Fazio and after examining his medical history.

The remainder of Fazio's arguments on this issue amount to disagreements with the district court's acceptance of the testimony of Dr. Sarrazin, the Government's expert, and rejection of the testimony of Dr. Peterson, Fazio's expert. The district court, however, is entitled to resolve such evidentiary conflicts given the conflicting expert testimony. There is nothing in the record suggesting the district court's acceptance of Dr. Sarrazin's testimony was clear error. Once Dr. Sarrazin's testimony is accepted, the government has met it burden of proving the medication plan outlined by Dr. Sarrazin was substantially likely to restore Fazio's competency to stand trial and substantially unlikely to have side effects. Compare United States v. Ghane, 392 F.3d 317, 319 (8th Cir. 2004) (holding that a finding that medication was 5 to 10 percent likely to restore competence was insufficient to show that restoring competence was "substantially likely"). The district court therefore did not clearly err by concluding involuntary medication will significantly further the prosecution's interest in prosecuting Fazio.

Finally, Fazio argues the administration of antipsychotic drugs is medically inappropriate in this case. Again, Fazio's argument on appeal amounts to a

disagreement with the district court's resolution of an evidentiary conflict in favor of the government. Dr. Pietz and Dr. Sarrazin, both of whom worked closely with Fazio, concluded Fazio suffered from paranoid schizophrenia. Dr. Sarrazin recommended medications in light of this diagnosis, and stated the proposed medications were medically appropriate in light of the medical factors unique to Fazio. Dr. Peterson, by contrast, testified that Fazio did not suffer from schizophrenia, but rather dementia. In light of Dr. Peterson's diagnosis, he opined that antipsychotic drugs were not appropriate for Fazio. We conclude the district court did not commit clear error by finding the course of action recommended by Dr. Pietz and Dr. Sarrazin medically appropriate.

III

We affirm.

_____