# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3784

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| David Eugene Nicklas, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 23, 2010
Filed:  November 5, 2010

_____

Before RILEY, Chief Judge, MURPHY and MELLOY, Circuit Judges.

_____

RILEY, Chief Judge.

Charged with transmitting in interstate commerce a threatening communication, in violation of 18 U.S.C. § 875(c), the district court[1] found David Eugene Nicklas incompetent to stand trial.  The district court ordered that Nicklas be involuntarily medicated in order to restore his competency.  Nicklas appeals.  We have jurisdiction over interlocutory appeals of orders for involuntary medication under the collateral order doctrine.  See Sell v. United States, 539 U.S. 166, 177 (2003).  We affirm.

_____

[1]The Honorable Jimm Larry Hendren, United States District Judge for the Western District of Arkansas.

## I. BACKGROUND

In September 2007, Nicklas was convicted in Arkansas state court of misdemeanor terroristic threatening. Nicklas had sent two letters, on Nicklas's personal letterhead, to a man he was not acquainted with, accusing the man of being an undercover FBI agent living in a house that did not belong to him. In the first letter, Nicklas ordered the man to vacate the house and sign the deed over to Nicklas. The second letter, also ordering the man to leave the house, was styled as a "final warning" by Nicklas.

On November 19, 2008, a grand jury returned an indictment charging Nicklas with knowingly and willfully transmitting in interstate commerce a facsimile communication containing a threat, in violation of 18 U.S.C. § 875(c). According to the indictment, in September 2008, Nicklas faxed the Department of Justice, Inspector General, the following message:

> Dear Sir: I understand the FBI is under attack nationwide. Agents are being killed in a number of cities and a major task force in [sic] trying to figure out why. Remember what I told you last week. Tom Duvall, Gambino crime boss gave you a message. For each day I do not receive the deed to my property which you are illegally holding, an FBI agent will die. The deadline is noon of each day. The FBI satellite office in Fayetteville, AR has the deed. Any other questions. Sincerely, David E. Nicklas.

Finding Nicklas incompetent to stand trial, the district court committed Nicklas to the government's custody, pursuant to 18 U.S.C. § 4241(d)(1), "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." Psychiatrist Ralph Newman, M.D., and Psychologist Maureen Reardon, Ph.D., performed a forensic evaluation of Nicklas's records, reviewed Nicklas's mental and physical condition, and requested that the district court order involuntary administration of medication "in order to restore Mr. Nicklas's competency to stand trial." The district court referred the request

to the magistrate judge,[2] who issued a report and recommendation that the request to medicate Nicklas be granted. The district court adopted the report and recommendation "***in toto***," ordering that Nicklas be forcibly injected should he refuse to take his oral medication voluntarily. Nicklas appeals.

## II. DISCUSSION

In Sell, the Supreme Court set forth four criteria the government must satisfy before it may obtain an order to forcibly medicate. See id. at 180-81. In United States v. Fazio, 599 F.3d 835 (8th Cir. 2010), petition for cert. filed (No. 10-5998), we explained:

> First, "a court must find that important governmental interests are at stake," though "[s]pecial circumstances may lessen the importance of that interest." Second, "the court must conclude that involuntary medication will significantly further those concomitant state interests." This includes finding that "administration of the drugs is substantially likely to render the defendant competent to stand trial," and "[a]t the same time . . . that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair." Third, "the court must conclude that involuntary medication is necessary to further those interests" and that "any alternative, less intrusive treatments are unlikely to achieve substantially the same results." Fourth, and finally, "the court must conclude that administration of the drugs is medically appropriate, i.e., in the patient's best medical interest in light of his medical condition." The Court then emphasized that the goal of this test is "to determine whether involuntary administration of drugs is necessary significantly to further a particular governmental interest, namely, the interest in rendering the defendant competent to stand trial."

---

[2]The Honorable Erin L. Setser, United States Magistrate Judge for the Western District of Arkansas.

Id. at 839 (citations omitted). It is the government's burden to prove the final three Sell factors by clear and convincing evidence. Id. at 840 n.2. "[W]e review de novo the district court's determination that important governmental interests are at stake, [and] we review the district court's determinations with respect to the remaining Sell factors for clear error." Id. at 840.

On the first factor, we conclude important governmental interests are at stake and no special circumstances have lessened those interests in this case. "The Government's interest in bringing to trial an individual accused of a serious crime is important. That is so whether the offense is a serious crime against the person or a serious crime against property." Sell, 539 U.S. at 180. Nicklas does not dispute the district court's finding that transmitting a threatening communication in interstate commerce "is certainly a serious offense." United States v. Nicklas, 2009 WL 3872140, at *5 (W.D. Ark. Nov. 18, 2009). Nicklas does argue special circumstances exist because "[f]orcibly medicating Mr. Nicklas will put him in the exact same circumstance he currently is facing—civil commitment in a medical facility if found to be a danger to others or their property." We disagree.

Nicklas *may* find himself in similar circumstances if he is forcibly medicated, but as the district court observed, this likely result is not certain. Although presently incompetent to stand trial, and therefore incompetent to make trial-related decisions, Nicklas has indicated that, were he brought to trial, he may not assert an insanity defense. If Nicklas maintains this view when brought to competence, he could well be convicted of the charge of the Indictment.[3] Nicklas's argument that the government lacks an interest in prosecuting him because any prosecution would not alter his position therefore fails.

_____

[3]The government's concession at oral argument that, if Nicklas were made competent and brought to trial "it is a possibility . . . we would be probably seeking a not guilty by reason of insanity" is of no moment. The government's role does not include selecting which defenses Nicklas may assert.

Another important governmental interest in prosecuting Nicklas is protecting the public from his future crimes. Nicklas has been in custody for less than half the time for which he could be imprisoned if convicted of the charge of the Indictment.[4] See 18 U.S.C. § 875(c) (imposing a five-year statutory maximum). In view of the admitted seriousness of the offense and the proportion of the potential sentence served, we conclude the length of Nicklas's confinement does not yet indicate a special circumstance. See Sell, 539 U.S. at 180 (deciding "the possibility that the defendant has already been confined for a significant amount of time . . . for which he would receive credit toward any sentence ultimately imposed," "affects, but does not totally undermine, the strength of the need for prosecution").

The recent case of United States v. White, ___ F.3d ___, No. 09-7933, 2010 WL 3672557 (4th Cir. Sept. 22, 2010), illustrates our conclusion. In White, the Fourth Circuit Court of Appeals reversed a district court's order to medicate forcibly because, among other reasons, White had "served more than the entirety of her likely sentence in pre-trial detention" and because "[t]he alleged victims of [White's] crimes . . . would not likely benefit or be made whole in any way by her prosecution." Id. at *15. In contrast to White, Nicklas has served approximately forty percent of the statutory maximum and less than the projected sentence under the United States Sentencing Guidelines (U.S.S.G. or Guidelines).[5] In addition, this case is factually dissimilar to White because here Nicklas has previously engaged in similar criminal conduct, which was also apparently related to or emanated from his mental disease. Unlike White, where the record did not show White was likely to commit relevant future crimes, id.

---

[4]Nicklas was arrested on October 27, 2008. Nicklas has been confined for just over two years.

[5]Although the projected Guidelines sentence is relevant to this factor, in a review at this stage of the proceedings, we place greater weight on the statutory maximum. We decline to rely heavily upon a "sentencing proceeding . . . [conducted] without the benefit of a presentence report and the facts necessary to conduct such a proceeding." White, 2010 WL 3672557, at *22 (Niemeyer, J., dissenting).

at *13, Nicklas's mental illness arguably finds expression in his offenses. For example, in the 2007 Arkansas state court case, Nicklas was convicted of misdemeanor terroristic threatening stemming from his posting of letters to a stranger falsely accusing the man of being an undercover FBI agent illegally living in Nicklas's house, while in this 2008 case Nicklas is accused of faxing the FBI a letter that states in part, "For each day I do not receive the deed to my property which you are illegally holding, an FBI agent will die." Because of the intertwined nature of Nicklas's mental disease and his crimes, it is reasonable for the government to presume Nicklas may persist in committing similar offenses, and the government has an important interest in preventing recidivism. Because of the relationship between Nicklas's alleged crime and his mental disease, and because of his prior conviction on similar charges, the government also has a substantial interest in seeking a sentence of supervised release in this case. See id. at *24 (Niemeyer, J., dissenting) ("[A] period of supervised release . . . might be especially important in circumstances . . . where [a defendant's] failure to recognize the seriousness of her conduct suggests that she may pose a substantial threat of reoffending if set free.").

This also raises another important distinction between this case and White. The White court focused on the non-violent nature of White's crime as a reason for a lessened governmental interest. See id. ("Not every serious crime is equally serious. The nature of White's crimes lessens the government's interest in prosecuting her because her alleged crimes were non-violent offenses."). While we recognize Nicklas's crime involved sending threatening letters and faxes, which Nicklas may argue are non-violent acts, we note this court has previously held the crime of mailing threatening communications to be a crime of violence. See, e.g., United States v. Left Hand Bull, 901 F.2d 647, 649 (8th Cir. 1990) (holding mailing a threatening letter was a crime of violence for the purposes of U.S.S.G. § 4B1.1).[6] Assuming, without

---

[6]Whether Left Hand Bull is still good law after Begay v. United States, 553 U.S. 137 (2008), is still an open question.

-6-

deciding, that the White court's distinction between violent and non-violent crimes is a proper consideration when determining the weight of the government's interest under Sell, we find the distinction weighs in favor of the government, not Nicklas. Although we do not decide whether the government's interest in prosecuting violent offenders is always greater than its interest in prosecuting non-violent offenders, we do hold that the government has a stronger interest in bringing a defendant who threatens to murder FBI agents to trial than it does in a case involving non-violent crime.

The government's strong interest in preventing Nicklas from committing similar crimes in the future is more substantial here than in White because of Nicklas's past similar criminal conduct and the relationship between Nicklas's mental disorder and his conduct. In addition, the government's interest has not yet dissipated to exhaustion. See Sell, 539 U.S. at 180. We therefore conclude no special circumstance militates against the government's important interests in this case and find the district court did not err as to the first Sell factor.

We find no clear error as to the remaining Sell factors. The district court found the second factor satisfied because, "based on Dr. Newman's assessment of a 70% success rate, . . . medication is substantially likely to render [Nicklas] competent to stand trial" and Nicklas "is substantially unlikely to have unmanageable side effects that would interfere with his ability to assist in his defense." See Nicklas, 2009 WL 3872140, at *7-*8. The district court was concerned, however, that Nicklas might not receive comparable treatment after his transfer from the Federal Medical Center. See id. at *2. The district court then committed to "review any recommendations as to the continued treatment of [Nicklas] . . . and will then direct the Marshal's Service and the detaining facility to make appropriate provisions for his continued medical care and treatment." Id. These findings were not clearly erroneous.

As to the third factor, the district court again credited Dr. Newman's opinion and found because Nicklas "has no insight into his mental illness, and is unable to

participate meaningfully in counseling or other non-medication treatments," and because his symptoms have not spontaneously remitted, "no alternative, less-intrusive treatment options are available." Id. at *8. Finally, the district court found, again based upon Dr. Newman's opinion, that administering the recommended drugs was "medically appropriate." Id. at *9. Although Nicklas disagrees with many of Dr. Newman's opinions, it was not clearly erroneous for the district court to be persuaded by, and base its findings upon, Dr. Newman's report.

## III. CONCLUSION

We affirm the judgment of the district court.

MELLOY, Circuit Judge, concurring in part and dissenting in part.

I concur in the opinion of the Court except with respect to whether Nicklas's mental state at the time of the alleged offense offsets the government's important interest in prosecuting those that threaten FBI agents. In my view, the government cannot forcibly medicate a mentally ill defendant in order to restore him to competency for trial when the government knows that he was legally insane at the time of the alleged offense and knows, with some certainty, that holding a trial would not affect the ultimate disposition of the case. Accordingly, I respectfully dissent.

In Sell, the Supreme Court reaffirmed the proposition that "an individual has a 'significant' constitutionally protected 'liberty interest' in 'avoiding the unwanted administration of antipsychotic drugs.'" 539 U.S. at 178 (quoting Washington v. Harper, 494 U.S. 210, 221 (1990)). This is because "[t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty." Harper, 494 U.S. at 229. Indeed, "when the purpose or effect of forced drugging is to alter the will and the mind of the subject, it constitutes a deprivation of liberty in the most literal and fundamental sense." Id. at 237–38 (Stevens, J., dissenting). To guard against any unwarranted intrusions, the Supreme

Court articulated a demanding, four-part test for determining when the government may forcibly medicate an individual solely for the purpose of restoring that person to competency to stand trial. Sell, 539 U.S. 180–81. Before laying out this test, though, the Supreme Court cautioned that such instances should be "rare." Id. at 180.

I do not believe Nicklas's case presents one of those "rare" circumstances. Under Sell, the government must first show that "important governmental interests are at stake" and that the "special circumstances" of a given case do not sufficiently offset those interests. 539 U.S. at 180. Here, the government has an important interest in prosecuting those that have allegedly threatened the lives of law enforcement officers. However, in my view, Nicklas's mental condition at the time of the alleged offense materially offsets the government's interest because whether Nicklas stands trial or not, his case likely will end with a civil commitment hearing.

According to the government's own expert, Dr. Robert Johnson, Nicklas was legally insane at the time he allegedly committed the crime, due to his paranoid schizophrenia. The government does not contest this fact and even concedes that it would "probably" seek an acquittal by reason of insanity at trial, not a conviction. As such, if Nicklas were forcibly medicated to the point he could stand trial, and if the government could meet its burden of proof at trial, Nicklas would almost certainly be found not guilty by reason of insanity. Pursuant to 18 U.S.C. § 4243(d), Nicklas would then face a civil-commitment hearing, in which he would have the burden of proving that "his release would not create a substantial risk of bodily injury to another person or serious damage of property of another due to a present mental disease or defect" before being released. If, on the other hand, the charge against Nicklas were dismissed because of his insanity, then he would still face a civil-commitment hearing pursuant to 18 U.S.C. § 4246(d), in which he would be released unless a court found that he "is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." Consequently, despite some variability between the burden of

proof in the two statutes, Nicklas would essentially face the same result: a civil-commitment hearing in which his release would hinge on the outcome of a dangerousness assessment.

The majority holds to the contrary, finding that Nicklas may be convicted and incarcerated because Nicklas has previously indicated he might not assert an insanity defense. While conceding this is a possibility, I do not believe the mere prospect that a defendant might choose not to defend himself at trial is sufficient to sustain the government's interest. As an initial matter, the record is generally devoid of convincing evidence indicating that Nicklas would refrain from asserting the insanity defense at trial if he were restored to competency. Additionally, the Supreme Court stated that "only an 'essential' or 'overriding' state interest" can justify forcibly medicating a defendant. Sell, 539 U.S. at 178–79 (quoting Riggins v. Nevada, 504 U.S. 127, 134–35 (1992)). I do not see how obtaining an unintended, and perhaps improper, application of the law—the conviction of a defendant who was indisputably insane at the time of the offense—can be an "essential" state interest. Indeed, the government's interest ultimately rests upon pursuing justice within the rubric of the law, and there is little justice to be found in convicting Nicklas for something he allegedly wrote while insane. See Berger v. United States, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."). As the Supreme Court explained in the context of an involuntary confession: "Surely in the present stage of our civilization a most basic sense of justice is affronted by the spectacle of incarcerating a human being upon the basis of a statement he made while insane." Blackburn v. State of Alabama, 361 U.S. 199, 207 (1960). Accordingly, I believe the government's general interest in prosecuting those that purportedly send threatening communications must give way in this case to Nicklas's liberty interest.

-10-

The majority also finds that the government has an important interest in prosecuting Nicklas in order to protect the public from his future crimes. However, under any resolution of this case, Nicklas will be not be released if a court finds him to be a danger to either himself or the community. Additionally, it is for the lower court, not our Court, to first assess Nicklas's dangerousness. As a consequence, I do not believe the government possesses a sufficient public-safety interest in forcibly medicating Nicklas for trial.

For the forgoing reasons, I concur in part and dissent in part.

_____