# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-1164
_____

United States of America

*Plaintiff - Appellee*

v.

Felipe Lorthridge

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: September 22, 2023
Filed: December 5, 2023
_____

Before COLLOTON, GRASZ, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

Felipe Lorthridge, Sr., was indicted for being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1). He was found incompetent to stand trial and later

diagnosed with schizophrenia. The district court[1] ordered that he be involuntarily medicated to restore his competency. Lorthridge appeals, and we affirm.

I.

The Government alleges that Lorthridge fled a traffic stop before ditching his car and a gun. He has been detained pending trial since his 2019 arrest.

After Lorthridge moved for a mental competency examination, a forensic psychologist concluded that a mental disorder impaired his ability to understand the nature and consequences of his trial and to assist counsel. She noted in her report that he believed in a widespread conspiracy involving the police, his fellow inmates, the prosecutor, his attorney, and the judiciary. The magistrate judge[2] found Lorthridge incompetent and ordered further treatment and evaluation to determine whether he would attain competency in the foreseeable future.

Lorthridge was transferred to the U.S. Medical Center for Federal Prisoners in Springfield, Missouri, where two more psychologists evaluated him and issued another report. The psychologists diagnosed him with schizophrenia and found that without antipsychotic medication, he was substantially unlikely to be restored to competency in the foreseeable future. Lorthridge refused to participate in competency restoration treatment and declined to take antipsychotic medication. In an administrative hearing, the facility found that Lorthridge was not a danger to himself or others in a correctional setting, so he could not be involuntarily medicated under *Washington v. Harper*, 494 U.S. 210 (1990).

The Government moved to involuntarily medicate Lorthridge to restore his competency under *Sell v. United States*, 539 U.S. 166 (2003). The magistrate judge

[1]The Honorable Stephen R. Clark, Chief Judge, United States District Court for the Eastern District of Missouri.
[2]The Honorable Nannette A. Baker, United States Magistrate Judge for the Eastern District of Missouri.

held a *Sell* hearing by video conference, which Lorthridge refused to join, and recommended granting the motion. Lorthridge objected, and the district court held a *de novo*, in-person hearing. Fearing that the in-person hearing was a veiled attempt to get him in a position vulnerable to attack, Lorthridge again refused to attend until the court ordered him to do so.

Three doctors from the Springfield facility testified: Dr. Gary Sarrazin, then Chief of Psychiatry; Dr. Elizabeth Tyner, Chief of Psychology; and Dr. Amanda Reed, one of the Springfield report's authors. Drs. Tyner and Reed interacted with Lorthridge during weekly rounds and described his behavior and condition. They said that his delusions kept him confined to his cell and sometimes unwilling to eat for fear of poisoning. Dr. Sarrazin, who retired before the *Sell* hearing, met with Lorthridge monthly and testified about a proposed treatment plan he developed. All agreed that Lorthridge suffers from schizophrenia and that he is unlikely to attain competency without antipsychotic medication. Dr. Sarrazin testified that in his 20 years at the facility, involuntary administration of antipsychotic medication restored competency to over 75% of people with psychotic disorders. And he believed that medication would improve Lorthridge's life by helping him function better, leave his cell, and interact with others.

The court found that the Government carried its burden under *Sell*, and it ordered that Lorthridge be involuntarily medicated consistent with Dr. Sarrazin's treatment plan. Lorthridge timely appealed, and we have jurisdiction under the collateral order doctrine. *United States v. Coy*, 991 F.3d 924, 926 (8th Cir. 2021).

II.

Lorthridge has "a significant constitutionally protected liberty interest in avoiding the unwanted administration of antipsychotic drugs." *Sell*, 539 U.S. at 178 (cleaned up) (citation omitted). But the Government may forcibly medicate a defendant if it shows "(1) that an important governmental interest is at stake; (2) that involuntary medication will significantly further that governmental interest; (3) that

involuntary medication is necessary to further that interest; and (4) that administration of the drugs is medically appropriate." *United States v. Mackey*, 717 F.3d 569, 573 (8th Cir. 2013) (citing *Sell*, 539 U.S. at 180–81).

Lorthridge challenges the district court's conclusions on the first, second, and fourth *Sell* elements. We review the first element *de novo* and the remaining elements for clear error. *Id.*

Bringing "an individual accused of a serious crime" to trial is an important governmental interest. *Sell*, 539 U.S. at 180. And possessing a firearm as a felon, for which Lorthridge faces a ten-year statutory maximum sentence, is a serious crime. *See Mackey*, 717 F.3d at 573 (finding a crime with "a maximum term of ten years' imprisonment . . . [was] 'serious' under any reasonable standard" (citation omitted)); *United States v. Fazio*, 599 F.3d 835, 840 (8th Cir. 2010) (being a felon and an armed career criminal in possession of a firearm is "very serious"). Lorthridge's suggestion that it is a "victimless, non-violent status offense" does not make it less serious, nor does it weaken the governmental interest in prosecution. *See Mackey*, 717 F.3d at 573–74.

We do not think the "special circumstances" Lorthridge cites undermine this interest. *See Sell*, 539 U.S. at 180 ("Special circumstances may lessen the importance of [the Government's interest in prosecution]."). Two of those circumstances attempt to undermine governmental interests that the district court did not rely on. He says that the court should have considered the lack of connection between his mental disease and alleged crimes, which we said in *United States v. Nicklas* is relevant to a different interest—"protecting the public from [an accused's] future crimes." 623 F.3d 1175, 1179 (8th Cir. 2010). He also argues that the court should have considered the *Harper* finding that he was not a danger to himself or others. But a *Harper* finding goes to yet another interest—"reduc[ing] danger that an inmate poses to himself or others while incarcerated." *Mackey*, 717 F.3d at 575. Neither the risk of recidivism nor an inmate's dangerousness while confined bears

on the important governmental interest at stake here—bringing an accused to trial for a serious crime.  So the district court was not required to consider them.

We leave for another day whether the length of Lorthridge's pre-trial detention, which he estimates is over half the maximum sentence, is "significant" such that it weakens the governmental interest.  *See Sell*, 539 U.S. at 180 (holding "significant" pre-trial detention is a special circumstance that may affect the governmental interest).  Even if it were, it would "not totally undermine[] the strength of the need for prosecution."  *Id.*; *see also Mackey*, 717 F.3d at 574–75. With no other special circumstances lessening the interest, the Government has satisfied the first *Sell* element.

And the record supports the district court's findings on the second and fourth *Sell* elements.  The court carefully considered the experts' testimony, psychologists' reports, and proposed treatment plan.  It reasonably credited testimony that involuntary medication with antipsychotics was substantially likely to restore Lorthridge to competency and that his treatment team could manage the risks of negative side effects and of his condition deteriorating when he is transferred for trial.  It did the same in finding that involuntary medication was medically appropriate and in his best medical interest.  Lorthridge may disagree with the experts' opinions, but the court's reliance on them was not clearly erroneous. *Nicklas*, 623 F.3d at 1180–81.

III.

The district court's judgment is affirmed.

———————————————