# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-3462

_____

United States of America

*Plaintiff - Appellee*

v.

Dico, Inc.; Titan Tire Corporation

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: January 15, 2019
Filed: April 11, 2019

_____

Before BENTON, MELLOY, and KELLY, Circuit Judges.

_____

BENTON, Circuit Judge.

Dico and Titan appeal the district court's[1] finding that they violated the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA), that they are jointly and severally liable for response costs, and that Dico

---

[1]The Honorable Robert W. Pratt, United States District Judge for the Southern District of Iowa.

is liable for punitive damages. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Dico, Inc. owned several buildings in Des Moines contaminated with Polychlorinated Biphenyls (PCBs) in the insulation. In 1994, the Environmental Protection Agency issued an administrative order that Dico remove some of the PCB contamination, encapsulate the remaining insulation, and submit a long-term maintenance plan for EPA approval. *See* **42 U.S.C. § 9606(a)** (authorizing the EPA to issue "such orders as may be necessary to protect public health and welfare and the environment"). The order also required ongoing testing, annual reports to the EPA, and immediate notification if changes in site conditions threatened further release of PCBs. Without informing the EPA, Dico—through its corporate affiliate Titan Tire Corporation—sold the buildings to Southern Iowa Mechanical (SIM) in 2007. Titan did not tell SIM that the buildings were contaminated with PCBs and subject to an EPA order. SIM tore down the buildings and stored them in an open field, where the EPA later found PCBs.

The EPA sued Dico to recover damages for its cleanup costs. It alleged Dico violated the CERCLA by arranging to dispose of a hazardous substance. *See* **42 U.S.C. § 9607(a)(3)** (establishing liability for those who "arrange[] for disposal . . . of hazardous substances"). The EPA also alleged Dico violated the 1994 order by circumventing the long-term maintenance plan, failing to prevent the additional release of PCBs, and failing to notify the EPA of changed site conditions. *See* **42 U.S.C. § 9606(b)(1)** (establishing liability for those who violate the terms and conditions of an EPA order). The district court granted summary judgment, finding CERCLA arranger liability and a violation of the 1994 order. ***United States v. Dico, Inc.***, 892 F. Supp. 2d 1138, 1163 (S.D. Iowa 2012). After a bench trial, it imposed civil penalties and punitive damages. ***United States v. Dico, Inc.***, 4 F. Supp. 3d 1047,

1068 (S.D. Iowa 2014). This court affirmed summary judgment on Dico's violation of the 1994 order and civil penalties, but held that questions of fact precluded summary judgment on arranger liability and punitive damages. *United States v. Dico, Inc.*, 808 F.3d 342, 354–355 (8th Cir. 2015).

On remand, the district court conducted a bench trial. *United States v. Dico, Inc.*, 265 F. Supp. 3d 902, 906 (S.D. Iowa 2017). It found that Dico and Titan arranged to dispose of a hazardous substance in violation of the CERCLA, and held them jointly and severally liable for $5,454,370 in response costs. *Id.* at 967, 970. It held Dico liable for the same amount in punitive damages, an amount equal to the costs incurred from Dico's violation of the 1994 order. *Id.* at 970–71. It also found Dico and Titan jointly and severally liable for all costs not yet reported, all future costs, all enforcement costs, and attorney's fees. *Id.* at 970. Dico and Titan appeal.

## II.

The CERCLA imposes strict liability for environmental contamination upon an entity that "arrange[s] for disposal . . . of hazardous substances." **42 U.S.C. § 9607(a)(3)**. "[U]nder the plain language of the statute, an entity may qualify as an arranger under § 9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Burlington N. & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 611 (2009). Dico and Titan qualify as arrangers if they "entered into the sale . . . with the intention that at least a portion of the product be disposed of" as a result of the transfer. *Id.* at 612.

"[T]he determination whether an entity is an arranger requires a fact-intensive inquiry." *Id.* at 610. "After a bench trial, this court reviews the district court's findings of fact for clear error." *Schaub v. VonWald*, 638 F.3d 905, 915 (8th Cir. 2011). This court will affirm "the district court's account of the evidence" if it is

"plausible in light of the record viewed in its entirety." *Id.*, *citing **Anderson v. City of Bessemer City***, 470 U.S. 564, 573–74 (1985).

Dico and Titan argue that the district court gave insufficient weight to evidence that the transaction was legitimate. For example, the terms of the 2007 sale mirror the terms of Dico and Titan's 2004 sale of a Weld Shop to SIM. Dico and Titan argue that because the 2004 sale was legitimate, the 2007 was legitimate too. The district court properly found that similarities in the transactions are "by no means conclusive evidence that [Dico and Titan's] intent regarding the former was the same as their intent regarding the latter." ***Dico***, 265 F. Supp. 3d at 966.

Next, Dico and Titan argue the usefulness of part of the buildings is evidence of a legitimate transaction. The district court found that the contaminated buildings' structural-steel beams were reusable if sampled and decontaminated. ***Dico***, 265 F. Supp. 3d at 957. An entity that "enter[s] into a transaction for the sole purpose of discarding a used and no longer useful hazardous substance" is liable under the CERCLA. ***Burlington N.***, 556 U.S. at 610. But, "an entity could not be held liable as an arranger merely for selling a new and useful product if the purchaser of that product later, and unbeknownst to the seller, disposed of the product in a way that led to contamination." ***Id.***

SIM's disposal of the contaminated insulation was not "unbeknownst to the seller." ***Id.*** The district court found that Dico and Titan Tire "knew the buildings would be dismantled once they were sold" and "sold the buildings with the intention they would be dismantled and removed from the real property on which they were located." ***Dico***, 265 F. Supp. 3d at 954–55. Though "knowledge alone is insufficient to prove" arranger liability, "an entity's knowledge that its product will be leaked, spilled, dumped, or otherwise discarded may provide evidence of the entity's intent to dispose of its hazardous wastes." ***Burlington N.***, 556 U.S. at 612.

-4-

Dico and Titan argue that the district court erred by failing to presume that the sale of useful products is a legitimate transaction. Even if there were a "presumption that persons selling useful products do so for legitimate business purposes," *Team Enterprises, LLC v. W. Inv. Real Estate Tr.*, 647 F.3d 901, 908 (9th Cir. 2011), it is not determinative. "[T]he usefulness of a product—however defined—is an important but not dispositive factor to consider in determining the seller's intent." ***Dico***, 808 F.3d at 349. Sellers of useful products may be liable as arrangers if they intend to dispose of hazardous substances through the sale. *See* ***Burlington N.***, 556 U.S. at 612. Here, the district court found that the commercial usefulness of the beams "weigh slightly in favor of concluding Defendants did not intend to arrange for the disposal of hazardous substance by selling the contaminated buildings to SIM." ***Dico***, 265 F. Supp. 3d at 957. But, the district court found this factor outweighed by evidence that Dico and Titan intended to dispose of the PCB contamination through the sale. *See* ***id.*** at 966–67.

"A party may sell a still 'useful' product . . . with the full intention to rid itself of environmental liability rather than a legitimate sale, for example where the cost of disposal or contamination remediation would greatly exceed its purchase price." ***Dico***, 808 F.3d at 349. Here, the cost of disposal or contamination remediation greatly exceeded the contaminated buildings' purchase price. The district court found that the removal, disposal, and sampling costs Dico avoided from the sale exceeded by ten times the value received from SIM in exchange. ***Dico***, 265 F. Supp. 3d at 963. "Consequently, . . . the balance of the value Defendants received from SIM compared to costs Dico avoided for proper disposal or remediation constitutes strong evidence of Dico's intent to avoid environmental liability through the sale of the contaminated buildings to SIM." ***Id.*** The district court found that the costs avoided were also strong evidence of Titan's intent to assist Dico in avoiding environmental liability, because Titan knew of the magnitude of the costs avoided by the sale, and Titan acted on behalf of Dico for environmental matters on the Dico site and the sale to SIM. *See* ***id.***

Dico and Titan argue that the district court gave too much weight to costs avoided, because the precise costs avoided are debatable, and there is no evidence that Dico and Titan actually calculated costs avoided before the sale. To calculate costs avoided, the district court relied on a feasibility study—prepared for the EPA—evaluating remedial alternatives at the contaminated Dico site. This 1996 study estimated that proper removal and disposal of the contaminated insulation in two buildings would cost about $988,567. The district court found that the costs avoided by selling the three buildings far exceeds this estimate. According to the feasibility study, building removal/disposal would be more expensive than insulation removal/disposal. Further, the estimate covered two of the three buildings, but not the costs of source-layer removal/disposal or residual contamination. Regardless of the precision of the estimate, the record supports the finding that proper disposal or remediation would have cost Dico hundreds of thousands of dollars, far exceeding the $117,000 SIM paid for the buildings. These costs avoided are evidence of Dico and Titan's intent to arrange for the disposal of the contaminated buildings, even without evidence they made the same calculations as the district court. The EPA gave the feasibility study to Dico and made it publicly available. Dico and Titan had access to the estimates the district court relied on. And even if they did not review the details of all these documents, the district court properly found they were aware of the general magnitude of the costs of complying with EPA regulations and that the sale would avoid significant costs.

Substantial further evidence supports the district court's conclusion that Dico and Titan intended to arrange for the disposal of a hazardous substance by selling the buildings to SIM. For example, the buildings were no longer commercially useful and required costly repairs, upkeep, and compliance with the EPA order. Dico and Titan did not have the buildings appraised, advertise their sale, or seek another buyer. They did not tell SIM the buildings were contaminated or subject to an EPA order. They had reason to believe SIM would not discover the contamination before

-6-

purchasing the buildings. These findings are sufficient to conclude that Dico and Titan arranged for the disposal of hazardous substances in violation of the CERCLA.

The clear-error standard of review governs this appeal. Dico and Titan object to the district court's weighing of the evidence, but ample evidence supports the court's findings of fact. "Under the clear-error standard of review, this court may not reverse the findings of the district court simply because it would have weighed the evidence differently or decided the case differently if sitting as the trier of fact." *Schaub*, 638 F.3d at 920, *citing Anderson*, 470 U.S. at 573. "[T]he district court's account of the evidence is plausible in light of the entire record," and its findings are not clearly erroneous. *Id.* at 923.

III.

Dico argues that the district court erred in awarding punitive damages. The CERCLA authorizes punitive damages against "any person who is liable for a release or threat of release of a hazardous substance [and who] fails without sufficient cause to properly provide removal or remedial action upon order of the President." **42 U.S.C. § 9607(c)(3)**. The punitive damages award may be "at least equal to, and not more than three times, the amount of any costs incurred by the Fund as a result of such failure to take proper action." *Id.* "[P]unitive damages are available only if the Fund incurs costs cleaning up the damage caused by a release or threat of release of hazardous substance." *Dico*, 808 F.3d at 352, *citing* **42 U.S.C. § 9607(c)(3)**.

"In this case, the Fund incurred cleanup costs at the SIM site . . . . from locating the Dico building debris at the SIM site, conducting sampling at the SIM site, overseeing the SIM cleanup, and enforcing this action for cost recovery and penalties at the SIM site." *Id.* This court previously reversed an award of punitive damages because it could not say as a matter of law that the sale precipitating these costs

violated the CERCLA. *Id.* at 354. Now affirming the finding that the sale violated the CERCLA, this court also affirms the punitive damages award.

IV.

Dico and Titan argue in the alternative that this court should reduce the arranger liability award to exclude enforcement costs. They argue the CERCLA does not authorize the award of enforcement costs, and that Titan should not be liable for enforcement costs incurred in the government's claims against Dico. This court rejects these arguments. The CERCLA provides that an arranger of the disposal of a hazardous substance is liable for "all costs of removal or remedial action incurred by the United States Government . . . not inconsistent with the national contingency plan." **42 U.S.C. § 9607(a)**. Dico and Titan do not dispute that the government's response costs are consistent with the national contingency plan. The terms "removal" and "remedial action" "include enforcement activities related thereto." **42 U.S.C. § 9601(25)**. The CERCLA "was designed to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." ***Burlington N.***, 556 U.S. at 602. *See also **United States v. Dico, Inc.***, 266 F.3d 864, 877 (8th Cir. 2001) ("CERCLA is a remedial statute designed to make parties responsible for introducing hazardous waste into the environment pay for cleaning up the messes they have created."). The CERCLA authorizes the recovery of *all* enforcement costs, and "attorney fees are recoverable as response costs under CERCLA." ***Id.*** at 878.

The district court properly held Dico and Titan jointly and severally liable for enforcement costs. "'[W]here two or more persons cause a single and indivisible harm, each is subject to liability for the entire harm.'" ***Burlington N.***, 556 U.S. at 614, *quoting* **Restatement (Second) of Torts, § 875**. "CERCLA defendants seeking to avoid joint and several liability bear the burden of proving that a reasonable basis for apportionment exists." ***Id.*** In a CERCLA case, once the government has

-8-

established liability, the burden shifts to the defendants to demonstrate that the harm is divisible. ***United States v. Hercules, Inc.***, 247 F.3d 706, 717 (8th Cir. 2001). Carrying this burden is "very difficult." ***Id.*** The district court did not err in finding that Dico and Titan did not carry that burden.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____