**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0467-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

J.H.P.,[1]

    Defendant-Appellant.

> **APPROVED FOR PUBLICATION**
>
> **April 8, 2024**
>
> **APPELLATE DIVISION**

Argued March 5, 2024 – Decided April 8, 2024

Before Judges Rose, Smith and Perez Friscia.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Somerset County, Indictment No. 20-12-0268.

Kevin Scott Finckenauer, Assistant Deputy Public Defender, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Shannon Mae Dolan, Assistant Deputy Public Defender, of counsel and on the brief).

Rory Alexander Eaton, Assistant Prosecutor, argued the cause for respondent (John P. McDonald, Somerset County Prosecutor, attorney; Rory Alexander Eaton and Bridgett Nichole Dudding, Assistant Prosecutor, of counsel and on the briefs).

---

[1] We use initials to protect the confidentiality of defendant's mental health diagnoses and evaluations. See R. 1:38-3(a)(2).

Alexander R. Shalom argued the cause for amicus curiae American Civil Liberties Union of New Jersey Foundation (American Civil Liberties Union of New Jersey Foundation, attorneys; Alexander R. Shalom and Jeanne M. LoCicero, on the brief.)

Claude Caroline Heffron argued the cause for amicus curiae Association of Criminal Defense Lawyers of New Jersey (Pashman Stein Walder Hayden, PC, attorneys; Claude Caroline Heffron, on the brief).

The opinion of the court was delivered by

ROSE, J.A.D.

At issue in this interlocutory appeal is the propriety of a pretrial order compelling the administration of psychotropic medication in an attempt to restore competency, without a defendant's consent, when the accused has not been deemed a danger to self or others. We also consider the appropriate standard of review of the State's application to involuntarily medicate a defendant under these circumstances.

A Somerset County grand jury charged defendant J.H.P. with second-degree burglary, N.J.S.A. 2C:18-2(a)(1) and (b)(1); second-degree aggravated arson, N.J.S.A. 2C:17-1(a)(2); third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(8); and third-degree hindering apprehension, N.J.S.A. 2C:29-3(b)(4), for allegedly setting ablaze a six-story apartment building under construction in

Bound Brook. The January 12, 2020 fire caused more than $50 million in property damage, injuries to a responding firefighter, and the evacuation of neighboring residences. Defendant was detained pretrial from January 12, 2020 to April 27, 2022, and thereafter transferred to Ann Klein Forensic Center (AKFC), where he remains civilly committed. See N.J.S.A. 2C:4-4.

On defense counsel's application, the first motion judge ordered an initial competency evaluation while defendant was detained in jail. Three additional evaluations were conducted after defendant was transferred to AKFC. The evaluators diagnosed defendant with mental illness, deemed him not competent to stand trial, and opined that psychotropic medication is necessary to restore competency. Because the evaluators determined defendant does not pose an immediate danger to self, others, or property – and refuses medication – the State sought court orders to involuntarily administer medication to restore competency.

By leave granted, defendant appeals from the August 24, 2023 Law Division order granting the State's third motion to involuntarily medicate him pursuant to the four-pronged test enunciated by the United States Supreme Court in Sell v. United States, 539 U.S. 166 (2003), as applied by this court in State v. R.G., 460 N.J. Super. 416 (App. Div. 2019). Defendant argues our state

A-0467-23

constitution affords broader protection than its federal counterpart and, as such, "New Jersey must reject the Sell standard as violating the well-established liberty interest to be free from unwanted medical treatment." See N.J. Const. art. I., ¶ 1. In the alternative, defendant contends the State failed to satisfy the first and second Sell prongs.

After granting defendant leave to appeal, we listed the matter for argument and invited the Office of the Attorney General of New Jersey (Attorney General) and the Association of Criminal Defense Lawyers of New Jersey (ACDL) to appear as amici curiae, focusing on the propriety of forced medication as an attempt to restore competency when a defendant has not been deemed a danger to self or others. The ACDL accepted our invitation; the Attorney General declined. Thereafter, we permitted the American Civil Liberties Union Foundation of New Jersey (ACLU) to participate. Amici primarily argue the Sell standard violates the New Jersey Constitution.

During oral argument before us, the State acknowledged: defendant has a substantial interest in challenging the forced administration of antipsychotic medication; this court in R.G. did not expressly adopt the Sell standard but applied the factors in that matter; and the State's applications for involuntary

medication to restore competency are sought and ordered sparingly. The State urges us to affirm the motion court's order.

With defendant's constitutional rights in view, we apply the <u>Sell</u> test and conclude the motion judge erroneously determined the State satisfied the second prong. We therefore reverse the order under review. In doing so, we hold our standard of review under the <u>Sell</u> test is mixed. We therefore review the motion court's legal conclusions de novo and its factual findings for clear error as to each <u>Sell</u> prong. Having resolved the issues by applying the <u>Sell</u> standard, we do not reach the constitutional arguments raised.

## I. Governing Legal Principles

To give context to the issues presented on appeal, we begin by setting forth the guiding legal principles. In <u>Sell</u>, the federal high court held:

> [T]he Constitution permits the Government involuntarily to administer antipsychotic drugs to a mentally ill defendant facing serious criminal charges in order to render that defendant competent to stand trial, but only if the treatment is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important government trial-related interests.
>
> [539 U.S. at 179.]

5

Thus, the motion court must first find "<u>important</u> governmental interests" are at stake. <u>Id.</u> at 180. The interest in bringing an individual charged with a serious crime, whether against person or property, to trial is such an interest. <u>Ibid.</u> Nonetheless, courts must consider the facts of the individual case in evaluating that governmental interest. <u>Ibid.</u> "Special circumstances," such as lengthy confinement in an institution for the mentally ill, would diminish the risks that the accused would go free without punishment and may affect the need for prosecution. <u>Ibid.</u> The same is true where the defendant has been confined in prison for a significant amount of time. <u>Ibid.</u>

Second, the motion court must conclude that the involuntary medication will "<u>significantly further</u>" those interests. <u>Id.</u> at 181. In so doing, the court

> must find that administration of the drugs is substantially likely to render the defendant competent to stand trial. At the same time, it must find that administration of the drugs is substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense, thereby rendering the trial unfair.
>
> [<u>Ibid.</u>]

"Third, the court must conclude that the involuntary medicine is <u>necessary</u> to further those interests." <u>Ibid.</u> The court "must find that any alternative, less intrusive treatments are unlikely to achieve substantially the same results." <u>Ibid.</u>

6

In addition, the court "must consider less intrusive means for administering the drugs," such as a "court order to the defendant backed by the contempt power, before considering more intrusive methods." Ibid.

Finally, the court must conclude that administration of the drugs is "medically appropriate"; that is, "in the patient's best medical interest in light of his medical condition." Ibid. The Court noted "[d]ifferent kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." Ibid.

Summarizing, the Court framed the issue in cases where the prosecution seeks to involuntarily medicate an accused as follows:

> Has the Government, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment, shown a need for that treatment sufficiently important to overcome the individual's protected interest in refusing it?
>
> [Id. at 183.]

"The Court made clear that the instances where [the Sell] factors would be met 'may be rare.'" R.G., 460 N.J. Super. at 429 (quoting Sell, 539 U.S. at 180).

Applying the Sell test in R.G., we addressed for the first time "whether a defendant charged with a crime, who is not competent to stand trial but who is competent to make medical decisions and has refused to take antipsychotic

7

medication, can be involuntarily medicated to restore competency to stand trial."

Ibid. The defendant in R.G. was charged with third-degree neglect of an elderly or disabled person, N.J.S.A. 2C:24-8(a). Id. at 420. At the request of defense counsel, the motion court ordered a competency evaluation, which was administered in a psychiatric hospital. Ibid.

Both doctors, who testified at the hearing on the State's motion to involuntarily medicate the defendant, found him not competent to stand trial. Id. at 421. They described the defendant as delusional and suffering from psychosis. Ibid. The psychiatrist recommended the administration of Prolixin to restore competency and treat the defendant's mental health issues. Id. at 421-22. He testified Prolixin could cause "abnormal movement," such as shaking, tremors, and rigidity. Id. at 422. However, other medications could be administered to control such reactions. Ibid. The psychiatrist concluded "it was in [the] defendant's best medical interest to take the medication" and "there was a reasonable probability the medication would enable [him] to participate in a trial." Ibid.

We agreed with the motion court that the State failed to satisfy the first Sell factor because "special circumstances lessened the State's interest in th[at] case." Id. at 431. Specifically, the defendant's confinement at the psychiatric

facility was lengthier than had he been convicted of the charged offense. Id. at 432. We concluded, the "court correctly considered the length of time [the] defendant was confined, his possible need for future confinement[,] and potential jail credits." Ibid. Although we did not reach the remaining Sell factors or address the constitutional argument raised by the defendant and amicus curiae ACLU, we recognized:

> A trial court, in applying the Sell test, should also consider the effects of the medication on a defendant's right to a fair trial. Medical experts should testify about how the medication is likely to affect a defendant's ability to communicate with counsel, to testify, to react rapidly to events in the trial, and to express emotions before the jury. See Sell, 539 U.S. at 185; see also Riggins v. Nevada, 504 U.S. 127, 137 (1992). The effect on physical appearance also should be considered. See Riggins, 504 U.S. at 137. It then is for the trial court to determine if a defendant's right to a fair trial will be adversely affected.
>
> [Id. at 430 (citations reformatted).]

## II. Defendant's Competency Evaluations

Dena Young, Psy.D., remotely conducted the first court-ordered competency evaluation in July 2021, while defendant was detained in jail. Dr. Young diagnosed defendant with "Schizoaffective Disorder Bipolar Type Multiple Episodes." Referencing defendant's mental health records, Dr. Young noted "a significant history of mental illness, inpatient hospitalizations, and

A-0467-23

outpatient treatment, since early adolescence." Further noting defendant "was stabilized with Remeron, Risperdal, and [t]razodone" while hospitalized in 2017, but "was not compliant with treatment and medication" following discharge, Dr. Young opined: "It is highly possible that his competence could be established or restored with inpatient treatment along with the introduction of psychotropic medication." The State then filed its first motion to involuntarily medicate defendant to restore competency.

At the January 2022 competency hearing, Dr. Young's report was admitted in evidence, and she testified on behalf of the State as an expert in forensic psychology. Dr. Young opined there was no indication in defendant's medical reports to suggest he suffered "severe side effects" while medicated. Further, there "should be some improvement within three to six months" after psychotropic medication, such as Risperdal, is commenced.

In a written decision, the first motion judge denied the State's application without prejudice, finding the State failed to "demonstrate[] that defendant will refuse medications." Finding hospitalization necessary for a proper evaluation of defendant's competency, the judge ordered defendant transferred to AKFC.

In May 2022, Tarita Collins, D.O., conducted a competency assessment at AKFC, which was admitted in evidence at the July 2022 commitment hearing

before the present judge. Qualified as the State's expert in forensic psychiatry, Dr. Collins testified defendant suffered from schizophrenia but did not pose "an imminent danger to himself or others because he has been incarcerated and has not . . . had any incidents." However, Dr. Collins found defendant not competent to stand trial. In her report, Dr. Collins explained: "It is substantially probable that [defendant] will regain competence in the foreseeable future with stabilization on medication. However, he refuses to consent to psychotropic medication and does not meet criteria for non-emergency involuntary medication in accordance with Division of Mental Health policy." See N.J.A.C. 10:37-6.54(i). Accordingly, Dr. Collins "recommended that the court reconsider involuntary medication to assist in establishing competency" opining therapy, alone, would not alleviate defendant's hallucinations and delusions.

On cross-examination, Dr. Collins acknowledged the administration of antipsychotic medication, including Risperdal, Zyprexa, and Seroquel, caused side effects such as sedation, ticks, and tremors. Generally, side effects could present within thirty days but "metabolic side effects could develop more long term."

In his written decision, the motion judge denied the State's application to involuntarily medicate defendant. The judge reasoned forced medication to

restore competency would violate defendant's right to be free from unwanted medication under the New Jersey Constitution. See N.J. Const. art. I., ¶ 1.

In the alternative, the judge found the State failed to satisfy the first and second Sell factors. As to the first factor, the judge found defendant was facing a prison term of five to ten years, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2, but the crimes "were likely committed due to [defendant's] psychiatric delusions." Finding defendant's liberty interests were at stake as determined in R.G., on balance, the judge was not convinced the State satisfied the first Sell factor by clear and convincing evidence. Declining to consider the remaining Sell factors, the judge nonetheless noted Dr. Collins's testimony that "forced medication of [defendant] would not guarantee results." As such, the judge found the State was unable to satisfy the second Sell prong.[2]

Another competency hearing was held in January 2023, during which Dr. Collins again testified on behalf of the State pursuant to her updated report, which was admitted in evidence. The expert opined defendant remained not competent to stand trial, specifically because he suffered delusions regarding the charges against him and was unable to work with his attorney to formulate

---

[2] Thereafter, defendant filed two motions to dismiss the indictment based on lack of competency. Defendant did not move for leave to appeal from either order denying those applications.

an adequate defense. With proper medication, it was "substantially probable" that defendant would regain competency within three to six months but he "will not become competent without taking medication." Dr. Collins further noted during prior hospitalizations, defendant was involuntarily medicated with Risperdal and trazodone and exhibited a positive response. Following the hearing, the judge found defendant remained incompetent to stand trial, continued his civil commitment, ordered another evaluation, and continued the matter for six months.

Dr. Collins evaluated defendant in June 2023; her report was admitted in evidence at the August 2023 hearing. Dr. Collins testified defendant continued to suffer from schizophrenia and his delusions affect his ability "to rationally . . . work with his attorney." The expert maintained there was a "substantial probability" defendant would regain competency if involuntarily medicated with antipsychotic medication. Noting the particular medication would be decided by defendant's treating psychologist, Dr. Collins opined Risperdal "would be the place to start" because the medical records indicated that drug had been prescribed previously. Dr. Collins reiterated it generally took three to six months to determine "if the medication is having an [e]ffect on him."

13

At the time of the hearing, defendant had completed "about two-thirds" of AKFC's Legal Competency Restoration Program (LCRP), which was designed "to address . . . components of competency without medication." In response to the judge's inquiry, Dr. Collins explained defendant "routinely" attends the program and participates but she could not opine at the time of the hearing whether LCRP would "ultimately have an effect" on his competency. In her report, Dr. Collins stated it was "premature at this time" to so conclude.

Dr. Collins also described defendant as "generally cooperative but just more or less isolates himself." She further stated defendant attends to "his hygiene" and "all the things that are required of him. He goes to the groups, and he goes to rehab[ilitation] programing." During "his entire hospitalization," however, "he has declined medication."

Following closing arguments, the motion judge reserved decision and thereafter issued a written opinion granting the State's application. In applying the four-part Sell test, the judge concluded the State proved, by clear and convincing evidence, an important governmental interest in medicating defendant. Citing the extensive damage to the building, the firefighter's injuries, and the threats to the surrounding buildings and residents, the judge found, "[s]ociety's interest in the prosecution of this case far outweighs . . . defendant's

interest in refusing prescribed medication (that he has already taken in the past)," satisfying the first prong.

As to the second prong, the judge acknowledged there was "no guarantee" medication would restore defendant to competency. Nor could "all side effects" of treatment be predicted but "there is a very real possibility" that defendant "may regain competency." The court further noted defendant "has exhausted all other forms of treatment including individual and group therapy," and "has taken Risperdal in the past without significant ill effects."

Addressing the third Sell prong, the judge was persuaded that "all other means of treatment have been used with little success." Noting defendant "has already taken medication in the past," the judge found defendant failed to demonstrate "any history of side[]effects from particular medications." The judge thus concluded the third prong was satisfied because "medication is necessary to assist in his well[-]being and stability for rehabilitation."

Citing Dr. Collins's most recent report, the motion judge also found the State satisfied the fourth Sell factor. Noting defendant generally was aware of the legal process, the judge determined defendant therefore possessed the ability to "regain full competency, if medicated with a drug he has already taken in the past."

15

## III. Analysis

### A. Standard of Review

We commence our analysis noting in R.G. we did not expressly address the standard for reviewing a trial court's decision on a motion to force medication to restore competency. Nor did the Court in Sell set forth the standard. However, "the overwhelming majority" of federal appellate courts considering such orders generally review the Sell first prong de novo and the remaining prongs for clear error. United States v. Fazio, 599 F.3d 835, 839 (8th Cir. 2010). That is because "[w]hether the Government's asserted interest is important is a legal question[,]" whereas the "court's findings with respect to the other Sell factors are factual in nature and are therefore subject to review for clear error." United States v. Gomes, 387 F.3d 157, 160 (2d Cir. 2004); see also United States v. Palmer, 507 F.3d 300, 303 (5th Cir. 2007) (expressly adopting the Second Circuit's standard of review articulated in Gomes); United States v. Lorthridge, 87 F.4th 889, 892 (8th Cir. 2023) (reviewing the first Sell prong "de novo and the remaining elements for clear error").

Under the clear error standard, the reviewing court "may not reverse the findings of the [motion] court simply because it would have weighed the evidence differently." United States v. Coy, 991 F.3d 924, 929 (8th Cir. 2021)

16

(quoting Schaub v. VonWald, 638 F.3d 905, 920 (8th Cir. 2011)).  Rather, an appellate court will affirm if the factual findings are "plausible in light of the record viewed in its entirety."  Ibid. (quoting United States v. Dico, Inc., 920 F.3d 1174, 1178 (8th Cir. 2019)); see also State v. Roth, 95 N.J. 334, 366 (1984) (defining clear error, in the sentencing context, as error that "could not have reasonably been made upon a weighing of the relevant factors").

At least one circuit, however, has extended de novo review beyond the first Sell prong.  United States v. Bradley, 417 F.3d 1107, 1113-14 (10th Cir. 2005).  In Bradley, the Tenth Circuit

> expand[ed] the parameters of the legal question to include whether involuntary administration of antipsychotic drugs "is necessary significantly to further important governmental trial-related interests." Sell, 539 U.S. at 179.  In other words, "has the Government, in light of the efficacy, the side effects, the possible alternatives, and the medical appropriateness of a particular course of antipsychotic drug treatment, shown a need for that treatment sufficiently important to overcome the individual's protected interest in refusing it?" Id. at 183.
>
> [Ibid. (footnote omitted) (citation reformatted).]

In reaching its decision, the Bradley court considered that "involuntary administration of antipsychotic medications implicates a constitutional right." Id. at 1113 (quoting Sell, 539 U.S. at 178-79).  The court thus reasoned:  "The

17

A-0467-23

standards we set must weigh this vital constitutional interest in the balance." Ibid. (referencing the standard of review and standard of proof governing the Sell factors).

Similarly, we recognize defendant's federal – and state – constitutional rights are implicated by the forced administration of medication solely to restore competency. In our view, all four Sell prongs necessarily involve mixed questions of law and fact. Stated another way, each of Sell's four prongs involves a legal determination as to whether: (1) "important governmental interests are at stake"; (2) involuntary medication will "significantly further" the State's interests; (3) "involuntary medication is necessary to further those interests"; and (4) "administration of the drugs is medically appropriate." See Sell, 539 U.S. at 180-81, 185. And each factor is dependent upon the facts and circumstances of the particular matter.

Moreover, our state's appellate courts generally review mixed questions of law and fact by affording deference to the trial court's factual findings that are supported by the record and reviewing de novo issues of law. See, e.g., State v. Pierre, 223 N.J. 560, 577 (2015); State v. Hinton, 216 N.J. 211, 228 (2013); State v. Handy, 206 N.J. 39, 44-45 (2011); State v. Elders, 192 N.J. 224, 243-44 (2007). In light of the constitutional rights at stake on a motion to involuntarily

18

medicate a defendant to restore competency, we are therefore satisfied a mixed standard of review is applicable to each Sell prong, and consonant with the majority of federal circuits, that the motion court's legal determinations on a Sell application are reviewed de novo while its factual findings are reviewed for clear error.

## B. Evidentiary Standard

We further note the Court in Sell did not address the evidentiary standard for establishing its four-pronged test. See R.G., 460 N.J. Super. at 429 n.5. In R.G., however, we discerned "the Sell 'findings must be supported by clear and convincing evidence.'" Ibid. (quoting Gomes, 387 F.3d at 160). We employ the same evidentiary standard here.

## C. Applicability of the Sell Test

With those standards in view, we address defendant's argument that the motion judge erroneously found the State satisfied the first and second Sell factors.

Defendant argues his pretrial confinement and "likely dismissal" of the charge by reason of insanity constitute "special circumstances" under the first Sell prong, thereby reducing the State's interest in restoring his competency by the administration of medication against his will. In August 2023, when the

present motion was decided, defendant had been confined on the present charges more than three years.

As we observed in R.G., "Sell's first factor requires more than simple consideration of the maximum sentence." 460 N.J. Super. at 431 (citing Sell, 539 U.S. at 180). We therefore followed those federal appellate courts that "consider the defendant's probable sentence" under the first Sell prong. Ibid. We reasoned "the Court would not have mentioned the need to consider special circumstances – such as the length of confinement, the potential for future confinement and jail credits to be applied toward sentencing – all of which could reduce the State's interest in prosecution." Ibid.

In the present matter, defendant's charges include two second-degree offenses, aggravated arson and burglary, both of which fall within a sentencing range of five to ten years' imprisonment, subject to an eighty-five-percent parole disqualifier under NERA. Further, an argument could be made for the imposition of consecutive prison terms if defendant were convicted of the third-degree aggravated assault or obstruction charges. See State v. Yarbough, 100 N.J. 627, 643-44 (1985).

A-0467-23

Realistically, however, in view of defendant's apparent lack of criminal history,[3] see N.J.S.A. 2C:44-1(b)(7), and mental health issues, see N.J.S.A. 2C:44-1(b)(4), defendant's sentencing exposure likely would be limited to between five and seven years, subject to NERA on the applicable counts. Therefore, when the motion judge decided the matter, defendant's confinement had not yet exceeded his likely sentence, assuming he's convicted of a second-degree NERA offense.

Moreover, as the motion judge found, the circumstances surrounding the present offenses included the destruction of an apartment building, more than $50 million in damages, and injuries to a firefighter. The judge also acknowledged the State's emphasis on defendant's well-being and desire to assist him in achieving rehabilitation via psychotropic medication. Based on our review of the record, we discern no clear error in the judge's findings on the first Sell prong and conclude the State demonstrated an important governmental interest by clear and convincing evidence.

---

[3] Born in November 1991, defendant was twenty-eight years old when he was arrested for the present offenses. Although Dr. Collins's June 2023 evaluation indicates defendant "had no prior legal history," defendant reported to Dr. Young that he had been arrested "about 3 or 4 times."

A-0467-23

Turning to the second <u>Sell</u> prong, defendant essentially argues: (1) the State failed to demonstrate the administration of psychotropic medication would make it substantially likely he will regain competency (first part of prong two); and (2) it is substantially unlikely he will experience side effects that would interfere significantly with his ability to participate in his defense at trial (second part of prong two).

As to the first part of prong two, the motion judge found "there is a very real possibility" defendant "may regain competency" from the forced administration of psychotropic medication. As the Court in <u>Sell</u> held, however, the test is whether medication is "substantially likely" to render the defendant competent. 539 U.S. at 181. In our view, "substantially likely" is more certain than "a very real possibility." Nonetheless, the record reveals Dr. Collins opined during a prior hospitalization, defendant had responded favorably to the administration of Risperdal. Moreover, the State's unrefuted expert testified it was "substantially probable" and there exists a "high likelihood" that defendant would regain competency if prescribed Risperdal.

Given this evidence, ordinarily, we would discern no clear error in the judge's decision that the State satisfied the first part of the second <u>Sell</u> prong. However, the judge also found defendant "exhausted all other forms of

A-0467-23

treatment" when, as Dr. Collins acknowledged, defendant had not yet completed LCRP. Based on the record before the motion judge, it therefore was premature to conclude the State established by clear and convincing evidence that the administration of psychotropic medication would make it substantially likely defendant will regain competency.

Ordinarily, we might remand for further development of the record, addressing whether defendant successfully completed LCRP. However, we also part company with the judge's finding under the second part of the second Sell prong, that is, whether the medication is "substantially unlikely to have side effects that will interfere significantly with the defendant's ability to assist counsel in conducting a trial defense." Sell, 539 U.S. at 181. Indeed, "[w]hether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions are matters important in determining the permissibility of medication to restore competence." Id. at 185 (citing Riggins, 504 U.S. at 142-45 (Kennedy, J., concurring)).

In a thoughtful concurring opinion in Riggins, Justice Kennedy made several observations about the side effects of antipsychotic drugs:

> The drugs can prejudice the accused in two principal ways: (1) by altering his demeanor in a manner that

will prejudice his reactions and presentation in the courtroom, and (2) by rendering him unable or unwilling to assist counsel.

It is a fundamental assumption of the adversary system that the trier of fact observes the accused throughout the trial, while the accused is either on the stand or sitting at the defense table. . . . At all stages of the proceedings, the defendant's behavior, manner, facial expressions, and emotional responses, or their absence, combine to make an overall impression on the trier of fact, an impression that can have a powerful influence on the outcome of the trial. . . .

The side effects of antipsychotic drugs may alter demeanor in a way that will prejudice all facets of the defense. Serious due process concerns are implicated when the State manipulates the evidence in this way.

. . . .

[T]he documented probability of side effects seems to me to render involuntary administration of the drugs by prosecuting officials unacceptable absent a showing by the State that the side effects will not alter the defendant's reactions or diminish his capacity to assist counsel.

. . . .

Concerns about medication extend also to the issue of cooperation with counsel. . . . The defendant must be able to provide needed information to his lawyer and to participate in the making of decisions on his own behalf. The side effects of antipsychotic drugs can hamper the attorney-client relation, preventing effective communication and rendering the defendant less able or willing to take part in his defense. The State

24

> interferes with this relation when it administers a drug to dull cognition.
>
> [504 U.S. at 142-44 (Kennedy, J., concurring).]

In the present matter, the motion judge generally acknowledged "all side effects" of the medication could not be predicted. In our view, however, the record does not demonstrate the administration of Risperdal or another psychotropic drug will not "alter[] his demeanor in a manner that will prejudice his reactions and presentation in the courtroom" or "render[] him unable or unwilling to assist counsel." See id. at 142. Although Dr. Young testified defendant's medical records revealed he had not suffered "severe side effects" during the prior administration of Risperdal, she did not elaborate further.

Additionally, Dr. Collins opined she would "start" treatment with Risperdal but there is no evidence in the record defendant's treating physician would prescribe that particular drug. Regardless, Dr. Collins acknowledged medication, such as Risperdal, could cause sedation and movement disorders such as ticks and tremors. Beyond the potential for these side effects, however, the record is devoid of any expert opinion concerning "how the medication is likely to affect . . . defendant's ability to communicate with counsel, to testify, to react rapidly to events in the trial, and to express emotions before the jury." R.G., 460 N.J. Super. at 430; see also Sell, 539 U.S. at 185; Riggins, 504 U.S.

at 137.  Nor is there any evidence in the record concerning the effects of the contemplated medication on defendant's "physical appearance."  See R.G., 460 N.J. at 430.  As we recognized in R.G., all these side effects impact "a defendant's right to a fair trial."  Ibid.

We therefore conclude the motion judge's finding on the second part of the second Sell prong was not "plausible in light of the record viewed in its entirety."  Coy, 991 F.3d at 929; see also Roth, 95 N.J. at 366.  Because the State failed to demonstrate by clear and convincing evidence it was substantially unlikely that the side effects of antipsychotic mediation will interfere with defendant's ability to assist his attorney and the presentation of his defense, we conclude the State failed to satisfy the second part of the second Sell prong.  Having done so, we need not consider the remaining Sell factors.

D.  Challenges to the Sell test under the New Jersey Constitution

Defendant argues our courts should reject the standards set forth in Sell as violative of the right to be free from unwanted medical treatment under the New Jersey Constitution.  He further maintains the involuntary administration of antipsychotic medication violates his right to a fair trial under our state's constitution and New Jersey's requirement that an individual civilly committed

to a psychiatric hospital can only be so medicated if he is an imminent danger to himself or others. Amici present similar constitutional arguments.

Because we conclude the State failed to shoulder its burden under the Sell test, we do not reach the constitutional challenges to the standards established by the United States Supreme Court. See R.G., 460 N.J. Super. at 430. "As a general rule, our courts strive to avoid reaching constitutional issues unless they are 'imperative to the disposition of the litigation.'" Strategic Env't Partners, LLC v. N.J. Dep't of Env't Prot., 438 N.J. Super. 125, 147 (App. Div. 2014) (quoting Comm. to Recall Robert Menendez v. Wells, 204 N.J. 79, 96 (2010)), aff'd, 221 N.J. 218 (2015). "A fundamental principle of judicial construction is that courts must avoid deciding a constitutional issue if, by disposing of other issues in the case, the constitutional question may be rendered moot." Berkley Arms Apartment Corp. v. City of Hackensack, 6 N.J. Tax 260, 266 (Tax Ct. 1983).

Disposition of the issues in this case requires that we avoid the constitutional questions raised. We simply add we have applied the Sell test with defendant's constitutional rights to a fair trial and bodily autonomy at the forefront.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0467-23